ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- | ) |
| | ) |
| ABS Development Corporation | ) ASBCA Nos. 60022, 60023, 61042 |
| | ) 61043, 61044, 61045 |
| | ) 61046, 61164 |
| | ) |
| Under Contract No. W912GB-10-C-0047 | ) |

APPEARANCES FOR THE APPELLANT:        Michael H. Payne, Esq.
                                      Lane F. Kelman, Esq.
                                        Cohen Seglias Pallas Greenhall &
                                          Furman, P.C.
                                        Philadelphia, PA

APPEARANCES FOR THE GOVERNMENT:       Michael P. Goodman, Esq.
                                        Engineer Chief Trial Attorney
                                      Brett R. Howard, Esq.
                                        Engineer Trial Attorney
                                        U.S. Army Engineer District, Europe

OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

Appellant brings claims for additional compensation, and challenges the government's assessment of liquidated damages, related to a contract for construction work in Israel. The government says that the contract is void *ab initio*.

FINDINGS OF FACT

On September 30, 2010, the government and appellant, ABS Development Corporation, contracted for ABS to perform construction work at an Israeli Navy shipyard in Haifa, Israel, for $26,956,562 (R4, tab 5 at 2, 5). ABS has been paid the amended contract price of approximately $46 million (tr. 2/92). The solicitation and resultant contract provided that "[t]his procurement is restricted to United States firms" only (R4, tab 21 at 2). Offers from non-U.S. firms would be rejected (R4, tab 260 at 7).

In its original, August 2010 proposal, ABS (a Delaware corporation based in New York (tr. 1/116)) represented that it was a subsidiary of Ashtrom International, Ltd., which "is fully owned by Ashtrom Group Ltd." (R4, tab 85 at 5049). ABS further represented that Ashtrom Group was an Israeli company, and that only two project personnel (the chief executive officer of ABS, and a purchasing manager) would be ABS personnel, neither of whom would be on-site in Israel (*id.*, R4, tab 22 at 3171). The proposal also represented that the remaining 39 personnel on an organizational chart

would be Ashtrom Group personnel, subcontractors, or independent consultants (R4, tab 22 at 3171).

On September 2, 2010, the contracting officer informed ABS that it was in the competitive range, but that weaknesses had been identified in the proposal, including that "ABS has no presence in Israel," and that "[t]he US Government does not negotiate with subcontractors" (R4, tab 75 at 3600). On September 16, 2010. the contracting officer asked ABS to "review your price proposal to see if any additional costs savings can be realized," and informed ABS that "[t]he Government remains concerned that the prime contractor does not have a management presence on site in key positions and as previously noted, the government does not negotiate with subcontractors" (*id.* at 3602). The contracting officer advised ABS that "if you choose to revise your bid schedule, please complete and return the revised bid schedule and proposal revisions" by September 17, 2010 (*id.*).

On September 19, 2010, ABS responded by thanking the contracting officer "very much for your confirmation letter of September 16[,] 2010 and for the opportunity to clarify your concerns" (R4, tab 23 at 3190). ABS further wrote:

> Please find below our respond [sic] to your letter and concerns:
>
> 1.    Technical proposal-Management approach
>
> *ABS Development Corporation will directly prequalify and employ all Construction Management personnel.*
> The CM personnel [lead] by the Project manager will report directly to ABS Development CEO and be the source of communication with the USACE [U.S. Army Corps of Engineers].

(*Id.*) (Emphasis added) ABS included in its response a revision to its proposal that represented (including in a new organizational chart) that the project manager and both assistant project managers would be ABS employees on-site in Israel (R4, tab 23 at 3190-91). The revision further represented that other ABS employees, as well as Ashtrom Group employees, would report to the ABS project managers (*id.* at 3191). Indeed, the revision represented that *20 management and design-level positions* that the original proposal indicated would be filled by Ashtrom Group personnel would be filled by ABS personnel who would be on-site in Israel (*id.* at 3190-3207). ABS's response evidently satisfied the contracting officer's concerns; she awarded the contract to ABS only 11 days later, on September 30, 2010 (*see* R4, tab 5 at 2). The

2

contracting officer and Source Selection Authority (SSA) Marilyn Jackson, was, at the time of the hearing, retired, and did not testify at the hearing (*id.*; tr. 6/38).*

However, ABS never hired anybody to work at the project site in Israel; all on-site work was performed by Ashtrom Group employees or subcontractors to Ashtrom Group (*see* tr. 1/160). That is the reasonable inference we draw from the following answer from ABS's CEO:

> Q How much of the funds that the government paid for this project each month to ABS Development did you transfer each month directly to Ashtrom?
>
> A All of it.

(*Id.*; *see also* tr. 4/223) Indeed, ABS understood that the project was "too big" for it, and wanted Ashtrom to carry it out (tr. 4/223). ABS paid none of the personnel depicted on the chart below the level of the CEO (*see* tr. 1/161-62); rather, Ashtrom Group paid those persons, with money transferred to Ashtrom Group by ABS (tr. 2/69-70). In particular, ABS did not hire the on-site project manager, contrary to the representation in its September 19, 2010 letter to the contracting officer that it would "employ all Construction Management personnel" (tr. 1/162, 194; R4, tab 23 at 3190). We find that ABS never intended, itself, to hire any on-site personnel, and that had it responded to the contracting officer's concerns by confirming that it would perform as originally proposed (that is, with no ABS personnel on-site), ABS would not have obtained the contract.

In ASBCA Nos. 60022, 60023, and 61042-61046, ABS brings claims for additional compensation and an extension of time to the contract performance period. In ASBCA No. 61164, ABS challenges the government's assessment of liquidated damages for alleged late completion of the contract work.

---

* The parties each cite a "Source Selection Decision Document," ostensibly prepared for the contracting officer's signature, that states that the contract will be awarded to ABS (tr. 4/35-37; R4, tab 255 at 22; gov't br. at 14; app. reply at 6). We do not credit that document; in addition to the contracting officer not having testified, the document is not signed or dated (R4, tab 255). The record does not establish that the SSA's rationale upon awarding the contract is captured by that unsigned document.

## DECISION

The government says that the contract is void *ab initio* because, the government says, ABS misrepresented that it would have on-site ABS project managers in Israel in order to obtain the contract, but, subsequently, did not hire anyone to work in Israel (gov't br. at 2-3, 8-10, 14). When a contractor makes a promise of future performance in a proposal and later fails to perform, this generally will be a basis for liability for breach of contract but not for misrepresentation; to also prove misrepresentation, the government must prove a misrepresentation at the time of proposal, such as that the contractor did not intend to perform or knew it could not perform. *L.C. Gaskins Construction Co.,* ASBCA No. 58550 *et al.,* 17-1 BCA ¶ 36,780 at 179,287 (citing RESTATEMENT (SECOND) OF CONTRACTS § 159 cmt. c, d (1981)). Where an appellant has obtained a contract through a material misrepresentation, with no realistic intention of performing in accordance with that representation, the contract is void *ab initio,* resulting in denial of the appeal. *See Vertex Construction & Engineering,* ASBCA No. 58988, 14-1 BCA ¶ 35,804 at 175,109 (appellant's misrepresentation that it would provide a master electrician as required by the contract, and the government's reliance on said misrepresentation, was enough to render the contract void *ab initio*). Here, shortly before obtaining the contract but after the contracting officer *twice* expressed concerns to ABS that its proposal showed no ABS management presence in Israel, ABS represented to the contracting officer that it would directly hire 20 personnel to perform on-site work, including the project's manager and assistant managers, instead of relying upon its Israeli parent company to fill those positions and perform that on-site work. That representation was material: the contracting officer had twice indicated to ABS that the government would only be negotiating on the project with the prime contractor.

In reality, ABS never hired anyone to perform on-site work; Ashtrom Group did, consistent with ABS's original proposal. Indeed, ABS never intended to hire any on-site personnel, and had it not misrepresented to the contracting officer that it would hire ABS personnel to fill key, on-site management positions, the contracting officer would not have awarded ABS the contract. Consequently, the contract is void *ab initio. Cf. Vertex,* 14-1 BCA ¶ 35,804 at 175,109. ABS urges the Board to infer from the absence of any testimony from Ms. Jackson, the contracting officer/SSA who awarded the contract, that she did not rely upon the misrepresentation that the government alleges (*see* app. reply at 7). We decline to draw that adverse inference. ABS does not demonstrate that Ms. Jackson, who was retired at the time the hearing was held, was peculiarly within the power of the government to produce as a witness. *See Ace Constructors, Inc. v. United States,* 70 Fed. Cl. 253, 270-71 n.17 (2006), *aff'd,* 499 F.3d 1357 (Fed. Cir. 2007). Moreover, the record shows that appellant misrepresented its direct involvement with the project in order to obtain the contract. Accordingly, the contract is void *ab initio.*

Because the contract is void *ab initio,* we need not address the parties' other arguments, and the appeals in which ABS brings affirmative claims are denied. *See Servicios*

4

*y Obras Isetan S.L.*, ASBCA No. 57584, 13 BCA ¶ 35,279 at 173,163. For the same reason, the appeal from the government's assessment of liquidated damages is sustained as no valid contract ever came into existence. *See Data General Corporation*, ASBCA Nos. 21865, 22568, 79-2 BCA ¶ 14,185 at 69,831-33 (sustaining appeals from default termination and assessment of excess reprocurement costs where "no valid contract came into existence"); *see also Dante Calcagni*, ASBCA No. 49903, 98-1 BCA ¶ 29,554 at 146,511-12 (Harty, A.J., concurring). As such, the government cannot assess liquidated damages.

## CONCLUSION

ASBCA Nos. 60022, 60023, 61042, 61043, 61044, 61045, and 61046 are denied. ASBCA No. 61164 is sustained.

Dated: January 7, 2019

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 60022, 60023, 61042, 61043, 61044, 61045, 61046, 61164, Appeals of ABS Development Corporation, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals